IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **DUKE UNIVERSITY and ALLERGAN SALES, LLC,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SANDOZ INC. and ALCON LABORATORIES, INC.**<br><br>**Defendant.** | **Civil Action No. 2:17-cv-528**<br><br>**JURY TRIAL DEMANDED** |

**DUKE UNIVERSITY AND ALLERGAN SALES, LLC'S
COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiffs Duke University and Allergan Sales, LLC ("Allergan") (collectively, "Plaintiffs"), claim relief from Defendants Sandoz Inc. ("Sandoz") and Alcon Laboratories, Inc. ("Alcon," and together with Sandoz, "Defendants") by their attorneys, and allege as follows:

**THE NATURE OF THE ACTION**

1. This is an action for infringement of United States Patent No. 9,579,270 ("the '270 Patent") under the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, including §§ 271(b), and 271(c), relating to Allergan's commercially successful hypotrichosis treatment, LATISSE®.

**THE PARTIES**

2. Duke University is an educational, research and healthcare institution and a North Carolina nonprofit corporation located in Durham, North Carolina.

3. Allergan Sales, LLC is a limited liability company organized and existing under the laws of the State of Delaware with a place of business at 2525 Dupont Drive, Irvine, California 92612.

4. On information and belief, Sandoz Inc. is a corporation organized and existing under the laws of the State of Colorado, having a place of business at 100 College Road West, Princeton, NJ 08540, and a registered agent at 50 Weston Street, Hartford, CT 06120.

5. On information and belief, Sandoz Inc. and Alcon Laboratories, Inc. are related corporate entities with respect to generic pharmaceuticals.

6. On information and belief, defendant Alcon Laboratories, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 6201 South Freeway, Fort Worth, TX 76134-2099, and a registered agent at 211 E. 7th Street, Suite 620, Austin, TX 78701-3218.

7. On information and belief, Defendants are in the business of manufacturing, distributing, and selling generic drugs throughout the United States, including in this District.

## VENUE AND JURISDICTION

8. This Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1338(a) because the action concerns a federal question arising under patent laws of the United States, including 35 U.S.C. § 271.

9. This Court has personal jurisdiction over the Defendants because Defendants have committed acts of patent infringement in this District.

10. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendants have a regular and established place of business in this District and have committed acts of patent infringement in this District.

11. LATISSE® (bimatoprost ophthalmic solution, 0.03%) is manufactured in and distributed from a facility in Waco, Texas. Allergan Sales, LLC employs approximately 675 people in Waco, Texas. Nationwide distribution of LATISSE® is coordinated from Texas. The

sale of, or offer to sell, Defendants' generic copy of LATISSE® injures Allergan specifically in Texas.

12. This Court has personal jurisdiction over each of the Defendants by virtue of the fact that, *inter alia*, Defendants have offered to sell and have sold their generic copy of LATISSE® in this District with a label containing instructions for its use, the use of which infringes claims 22 and 30 of the '270 Patent. Defendants' label, *see* **Exhibit A**, instructs patients and/or healthcare providers to administer Defendants' generic copy of LATISSE® according to the methods of claims 22 and 30 of the '270 Patent. Therefore, Defendants have committed, or aided, abetted, induced, contributed to, and/or participated in the commission of, a tortious act of patent infringement that has led to foreseeable harm and injury to Plaintiffs in this District. This Court has personal jurisdiction and proper venue over each of the Defendants for the additional reasons set forth below and for other reasons that will be presented to the Court if such personal jurisdiction or venue is challenged.

13. On information and belief, Sandoz is a licensed drug distributor of prescription drugs by the State of Texas.

14. On information and belief, Sandoz manages the marketing and sales of its ophthalmic products from Alcon's Fort Worth, Texas office.

15. On information and belief, Sandoz sells its products to pharmacies, including pharmacies in this District.

16. On information and belief, Sandoz maintains established contacts with Texas wholesalers, retailers, and state agencies to further the sales of its products.

17. On information and belief, Sandoz's drug products are listed on the Texas prescription drug formulary.

3

18. On information and belief, numerous Sandoz over-the-counter products are available for purchase at pharmacies throughout Texas and in this District.

19. On information and belief, Sandoz products appear on the Preferred Drug List for the Texas Medicaid program, and are available to millions of Texans in this District and throughout the State who participate in the Texas Medicaid program.

20. On information and belief, Sandoz, under the Novartis corporate structure, has entered into arrangements with pharmaceutical wholesalers, including AmeriSource Bergen Co., Cardinal Health, and McKesson Co., which distribute Sandoz products to pharmacies throughout Texas, including in this District.

21. On information and belief, AmeriSource Bergen Co. operates a large distribution center in this District in Roanoke, Texas, where Sandoz products bound for this District and locations throughout Texas are warehoused prior to distribution.

22. On information and belief, Sandoz markets and sells generic drugs manufactured by Sandoz throughout Texas, including in this District. On information and belief, Sandoz sold approximately $1.3 billion of its products in Texas in 2016. On information and belief, approximately $436 million of those sales were in this District. Sandoz continues to achieve substantial sales in both Texas and this District.

23. Alcon Laboratories, Inc. is listed as the manufacturer of Defendants' generic copy of LATISSE® on the product's label. (*See* Ex. A, at 12.) Alcon manufactures the Defendants' generic copy of LATISSE® in Fort Worth, Texas. (*See* Ex. A, at 12.)

24. On information and belief, Alcon Laboratories, Inc. operates a 100-acre campus in Fort Worth, Texas, employing 3,000 employees.

25. On information and belief, Alcon Laboratories, Inc. leases property in this District.

4

26. On information and belief, Alcon Laboratories, Inc. is a licensed drug distributor of prescription drugs by the State of Texas.

27. On information and belief, during the past twelve months, Alcon Laboratories, Inc. sold nearly $312 million worth of Alcon Laboratories, Inc.'s products in Texas, over $106 million of which were sold in this District. Alcon continues to achieve substantial sales both in Texas and this District.

28. On information and belief, Sandoz and/or Alcon employ sales representatives in this District.

29. On information and belief, Sandoz and Alcon also intend to take advantage of Alcon's channels of distribution in Texas for the sale of Defendants' generic copy of LATISSE®. These channels of distribution were arranged by Alcon to take advantage of the Texas market, the second-largest market for prescription drugs in the United States.

30. On information and belief, since its launch, Defendants' generic copy of LATISSE® has caused Allergan's sales of LATISSE® to decline by around 50% in the Texas region.

31. On information and belief, Sandoz and Alcon know and intend that Defendants' generic copy of LATISSE® is distributed and sold in Texas, and that it has displaced and will continue to displace Allergan's LATISSE® product, causing injury to Allergan in Texas and in this District.

32. For at least these reasons, Defendants have a regular and established place of business in this District, and venue is proper in this District.

## FACTUAL BACKGROUND

### A. The Asserted '270 Patent, Prostaglandins, and Bimatoprost

33. On February 28, 2017, United States Patent No. 9,579,270 ("the '270 Patent"), titled "Compositions and Methods for Treating Hair Loss Using Non-Naturally Occurring Prostaglandins," was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to inventors Mitchell A. deLong, John M. McIver, and Robert S. Youngquist. A true and correct copy of the '270 Patent is attached to this complaint as **Exhibit B**.

34. The '270 Patent is assigned to Duke University.

35. Allergan holds an exclusive license to the '270 Patent.

36. The '270 Patent has a patent term that expires on January 31, 2021.

37. In general, the '270 Patent is directed to methods and compositions using prostaglandin F analogs for growing hair. (*See* Ex. B, '270 Patent, at 3:40-43.)

38. Prostaglandins are naturally occurring molecules that play an important signaling role in human biology.

39. The human body contains several prostaglandin receptors with which prostaglandins bind to produce biological effects. For example, Prostaglandin $F_{2\alpha}$ ("$PGF_{2\alpha}$"), a naturally occurring prostaglandin, binds to the prostaglandin F, or "FP," receptor.

40. The structure of $PGF_{2\alpha}$ is set forth below:

[Chemical structure diagram of $PGF_{2\alpha}$ showing a cyclopentane ring with HO groups at positions 9 and 11, with carbon chain numbering 1-20, carboxylic acid group at C1, and OH at C15]

41. In the above structure of $PGF_{2\alpha}$, each number from 1 to 20 represents a carbon atom. Carbon atoms numbered 1 through 7, taken together, form what is known as the α ("alpha") chain.

6

Carbon atoms numbered 13 through 20, taken together, form what is known as the ω ("omega") chain. The structure at Carbon 1 ("C-1") is known as a carboxylic acid.

42. The structure of bimatoprost – the active ingredient of LATISSE® and Defendants' generic copy of LATISSE® – is set forth below:

[Chemical structure of bimatoprost]

43. Bimatoprost is a synthetic $PGF_{2\alpha}$ analog. Bimatoprost differs structurally from $PGF_{2\alpha}$ in two important respects. First, bimatoprost contains an ethyl amide at the C-1 position, whereas $PGF_{2\alpha}$ contains a carboxylic acid at the C-1 position. Second, the omega chain of bimatoprost is shortened by three carbons compared to $PGF_{2\alpha}$ and contains a phenyl group at the C-17 position.

44. Unlike $PGF_{2\alpha}$ which binds to the FP receptor, bimatoprost does not bind to the FP receptor, but instead binds to a splice variant of the FP receptor, also referred to as the prostamide receptor.

45. It is believed that the primary reason for bimatoprost's inability to interact with the FP receptor is that it has an ethyl amide group rather than a carboxylic acid group at the C-1 position.

46. Thus, bimatoprost has a different pharmacological activity than $PGF_{2\alpha}$ and $PGF_{2\alpha}$ analogs with C-1 carboxylic acid groups.

47. Asserted dependent claim 22 of the '270 Patent depends from claim 17, and specifies $R^1$ is $C(O)NHR^3$, which denotes an amide group at the prostaglandin C-1 position.

48. Asserted claim 30 of the '270 Patent depends from claims 17, 24 and 25, and specifies that Z is phenyl, which denotes a phenyl group at the prostaglandin C-17 position, and that $R^1$ is C(O)NHR$^3$, which denotes an amide at the prostaglandin C-1 position.

49. Bimatoprost is encompassed by the prostaglandin F analog structures defined by asserted claims 22 and 30 of the '270 Patent because, in bimatoprost, $R^1$ is C(O)NHR$^3$ wherein $R^3$ is $CH_2CH_3$; X is $CH_2CH_2$; and Z is phenyl.

B. **FDA Approval of LATISSE®**

50. Allergan, Inc. is the holder of approved New Drug Application ("NDA") No. 22-369 for bimatoprost ophthalmic solution, 0.03%, sold by Allergan Sales, LLC in the United States under the LATISSE® registered trademark. Allergan, Inc. is the corporate parent of Allergan Sales, LLC.

51. LATISSE® is indicated to treat hypotrichosis of the eyelashes by increasing their growth, including length, thickness, and darkness.

52. FDA approved LATISSE® in 2008. Before that approval, FDA had sanctioned only two other hair growth agents in its history, minoxidil (Rogaine®) and finasteride (Propecia®)—both for the growth of scalp, not eyelash hair. These limited FDA approvals reflect that the field of hair growth is unpredictable and mysterious.

53. LATISSE® has been a commercially successful product for Allergan, resulting in net sales for Allergan of over $70 million annually since its launch in 2009.

54. In or about March 2017, the FDA published the '270 Patent in its list of "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly referred to as the "Orange Book," which provides notice concerning patents covering FDA-approved drugs.

55. The use of LATISSE® is covered by asserted claims 22 and 30 of the '270 Patent.

### C. Prior Litigation Concerning Generic Latisse® Products

56. Allergan, Inc. and Sandoz, Inc. have previously litigated other patents that cover LATISSE®, including U.S. Patent No. 7,388,029 ("the '029 Patent"), to which the asserted '270 Patent claims priority.

57. That prior litigation stemmed from Sandoz's submission of ANDA No. 202719 under section 505(j) of the FDCA, seeking FDA approval to engage in the commercial manufacture, use, importation, sale, or offer for sale of Bimatoprost Ophthalmic Solution, 0.03%, Defendants' generic copy of Allergan's LATISSE® product.

58. In the prior litigation, the asserted claims of the '029 Patent recited a method of treating hair loss (construed to mean that the invention may arrest hair loss, reverse hair loss, or promote hair growth in the alternative) by administering a compound within a broad group of prostaglandin compounds set forth in the claim. While that group covered bimatoprost, which as explained above has an amide at the C-1 position (identified as $R^1$ in the '029 Patent claims), it also covered many other prostaglandin compounds with other types of groups at the C-1 position, including carboxylic acids. Those other compounds are not known to interact with the prostamide receptor like bimatoprost, but instead, because they have a carboxylic acid at the C-1 position, interact with the FP receptor.

59. In the prior litigation, the district court found that Sandoz's sale or offer for sale of its generic copy of LATISSE® constituted contributory infringement of, and induced infringement of, the asserted claims of the '029 Patent, and that those claims were valid. *See Allergan, Inc. v. Apotex, Inc.*, No. 1:10-CV-681, 2013 WL 286251 (M.D.N.C. Jan. 24, 2013), *rev'd in part* 754 F.3d 952 (Fed. Cir. 2014).

60. In finding the asserted '029 Patent claims non-obvious, the district court relied primarily on the different and unexpected pharmacological activity of C-1 amide prostaglandin compounds as compared to the prior art, which showed that various prostaglandin compounds had different hair growth effects, and the finding that the field of hair growth is and was unpredictable and mysterious. *Allergan*, 2013 WL 286251, at *9-10.

61. The Federal Circuit affirmed the district court's claim construction, and thus the infringement finding. *Allergan*, 754 F.3d at 958.

62. The Federal Circuit, however, ultimately reversed the district court's determination of non-obviousness of the asserted claims of the '029 Patent, though the Court did not disturb the district court's factual findings related to the different behavior of the C-1 amide compounds like bimatoprost. *See generally Allergan*, 754 F.3d 952.

63. Instead, the Federal Circuit found that, because the claims of the '029 Patent were not limited to prostaglandin compounds having C-1 amides, but also broadly covered prostaglandin compounds with carboxylic acids at the C-1 position, "[g]iven the breadth of the '029 Patent's claimed invention, appellants did not have the exacting burden of showing a reasonable expectation of success in using the narrow class of PGF analogs with C1-amide groups to treat hair loss." *Id.* at 962-63. Because the district court had focused only on prostaglandin compound with C-1 amides, the Federal Circuit found error.

64. The Federal Circuit performed the same type of analysis for the district court's finding of unexpected results, concluding that it was error for the district court to have focused only on the C-1 amides, and any results for the amides were not commensurate in scope with the '029 Patent claims. *Id.* at 963.

65. Asserted claims 22 and 30 of the '270 Patent, in contrast to the claims of the '029 Patent that were found obvious in the prior litigation, are limited to prostaglandin compounds with an amide at the C-1 position. Therefore, the findings discussed by the Federal Circuit with respect to the different behavior of C-1 amides, and the unexpected results for these compounds, including bimatoprost, are commensurate with the more narrow scope of the asserted '270 Patent claims.

**ACTS GIVING RISE TO THIS ACTION FOR DEFENDANTS' INFRINGEMENT OF THE PATENT-IN-SUIT**

66. On April 19, 2016, Sandoz obtained FDA approval, pursuant to ANDA No. 202719, to market and sell Defendants' generic copy of LATISSE®.

67. On December 7, 2016, Sandoz announced the U.S. market launch of Defendants' generic copy of LATISSE®.

68. On information and belief, Sandoz has sold and is currently selling Defendants' generic copy of LATISSE®, including in this District.

69. On information and belief, Sandoz intends and desires that its generic copy of LATISSE® be prescribed and used as a substitute for Allergan's LATISSE® product. The label accompanying Defendants' generic copy of LATISSE® is attached hereto as Exhibit A.

70. According to Defendants' label, Alcon Laboratories, Inc. is manufacturing Defendants' generic copy of LATISSE® in Texas.

**COUNT I**

**(Induced Infringement Under 35 U.S.C. § 271(b) of Claims 22 and 30 of the '270 Patent)**

71. Paragraphs 1 through 70 are incorporated herein as set forth above.

72. Defendants have been and are actively inducing others to infringe claims 22 and 30 of the '270 Patent, in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing bimatoprost ophthalmic solution, 0.03% for treating hypotrichosis of the eyelashes by increasing their growth including length.

73. Defendants include within the packaging of their generic copy of LATISSE®, and make available to healthcare providers and/or patients, including through the website https://www.us.sandoz.com/patients-customers/product-catalog, a label and/or instructions for use of their generic copy of LATISSE®, including as set forth in Sandoz's December 7, 2016 press release available at https://www.us.sandoz.com/news/media-releases/sandoz-launches-generic-version-latisser, that instruct patients to perform the methods of claims 22 and 30 of the '270 Patent.

74. Healthcare providers administering and/or patients using Defendants' generic copy of LATISSE® within the United States for the treatment of hypotrichosis of the eyelashes according to the instructions included in Defendants' label directly infringe claims 22 and 30 of the '270 Patent.

75. Defendants' generic copy of LATISSE® is a liquid solution that contains 0.03% bimatoprost by weight. (Ex. A, at 3.)

76. Defendants' label states that their bimatoprost ophthalmic solution, 0.03% "is indicated to treat hypotrichosis of the eyelashes by increasing their growth including length, thickness and darkness." (Ex. A, at 2.)

77. Defendants' label also states that patients are to "[o]nce nightly, place one drop of bimatoprost ophthalmic solution, 0.03% on the disposable sterile applicator supplied with the

package and apply evenly along the skin of the upper eyelid margin at the base of the eyelashes." (Ex. A, at 2.)

78. On information and belief, Defendants' generic copy of LATISSE® stimulates and promotes hair growth. (See, e.g., Ex. A at 7.)

79. On information and belief, the concentration of bimatoprost in Defendants' generic copy of LATISSE® is a safe and effective amount. (Id.)

80. On information and belief, Defendants monitor Duke University's prosecution of patents related to methods of treating the loss or promoting the growth of eyelashes, including applications that claim priority to the previously litigated '029 Patent and, thus, had knowledge of the '270 Patent and the scope of asserted claims 22 and 30 when it issued.

81. On information and belief, Defendants monitor the Orange Book, including with respect to LATISSE®, and thus knew, in or around March 2017, that the '270 Patent was listed in the Orange Book as covering LATISSE®.

82. On information and belief, based at least on the prior litigation between Allergan, Inc. and Sandoz, Inc., including the finding that the proposed sale and marketing of Defendants' generic copy of LATISSE® constituted infringement of the asserted claims of the related '029 Patent, Defendants know and had reason to believe that the use of their generic copy of LATISSE® according to the instructions in Defendants' label constitutes direct infringement of 22 and 30 of the '270 Patent, and that Defendants' sale and marketing of their generic copy of LATISSE® induces infringement of claims 22 and 30 of the '270 Patent.

83. On information and belief, Defendants possessed specific intent to encourage direct infringement of claims 22 and 30 of the '270 Patent, including because Defendants' label instructs users to perform those patented methods (see Ex. A, at 2), providing evidence of an affirmative

intent to induce infringement. Furthermore, because LATISSE® and Defendants' generic copy of LATISSE® have no substantial noninfringing uses, Defendants intend for the administration or use of their generic copy of LATISSE® to directly infringe the '270 Patent.

84. On information and belief, Defendants knew that the administration or use of their generic copy of LATISSE® for the hypotrichosis indication would be an act of direct infringement of claims 22 and 30 the '270 Patent, and that the activities referenced in this Complaint, including the sale of Defendants' generic copy of LATISSE® at a discount, and providing instructions to infringe claims 22 and 30 of the '270 Patent through their product's label and press release, would actively induce direct infringement of claims 22 and 30 of the '270 Patent. On information and belief, despite such knowledge, Defendants have been and are actively inducing infringement of claims 22 and 30 of the '270 Patent by others.

85. Despite being on notice of the '270 Patent, despite the fact that literal infringement of claims 22 and 30 of the '270 Patent was readily determinable by Defendants when they were put on notice, and despite the fact that Defendants knew their generic copy of LATISSE® had already been found to infringe the related '029 Patent, Defendants have continued to sell their generic copy of LATISSE®. Defendants are aware that, as a generic competitor, Allergan and Duke University are harmed by such sales. Nevertheless, Defendants have not ceased selling their product. Therefore, Defendants' actions have been both deliberate and malicious. Accordingly, Defendants' infringement of claims 22 and 30 of the '270 Patent has been willful.

86. On information and belief, Defendants will continue to induce the infringement of claims 22 and 30 of the '270 Patent unless and until they are enjoined by the Court.

87. As a result of Defendants' inducement of infringement of claims 22 and 30 of the '270 Patent, Plaintiffs have suffered damages, including lost profits.

# COUNT II

**(Contributory Infringement Under 35 U.S.C. § 271(c) of Claims 22 and 30 of the '270 Patent)**

88. Paragraphs 1 through 87 are incorporated herein as set forth above.

89. Defendants have been and are contributing to the infringement of claims 22 and 30 of the '270 Patent in this District and elsewhere in the United States by making, offering to sell, selling, importing and otherwise promoting and distributing their generic copy of LATISSE® for the treatment of hypotrichosis, which is a material or apparatus for use in practicing the methods of claims 22 and 30 of the '270 Patent.

90. Healthcare providers administering and/or patients using Defendants' generic copy of LATISSE® within the United States for the treatment of hypotrichosis of the eyelashes according to the instructions included in Defendants' label directly infringe claims 22 and 30 of the '270 Patent.

91. On information and belief, Defendants monitor Duke University's prosecution of patents related to methods of treating the loss or promoting the growth of eyelashes, including applications that claim priority to the previously litigated '029 Patent and, thus, had knowledge of the '270 Patent and the scope of asserted claims 22 and 30 when it issued.

92. On information and belief, Defendants monitor the Orange Book, including with respect to LATISSE®, and thus, knew in or around March 2017 that the '270 Patent was listed in the Orange Book as covering LATISSE®.

93. On information and belief, based at least on the prior litigation between Allergan, Inc. and Sandoz, Inc., including the finding that Defendants' proposed sale and marketing of their generic copy of LATISSE® constituted infringement of the asserted claims of the related '029 Patent, Defendants know and had reason to believe that the use of their generic copy of LATISSE®

15

according to the instructions in Defendants' label constitutes direct infringement of 22 and 30 of the '270 Patent, and that Defendants' sale and marketing of their generic copy of LATISSE® constitutes infringement of claims 22 and 30 of the '270 Patent.

94. On information and belief, Defendants knew that bimatoprost is a material part of the methods of treatment of claims 22 and 30 of the '270 Patent, Defendants' generic copy of LATISSE® was especially made or especially adapted for administration by a healthcare provider or use by a patient in a manner that would infringe claims 22 and 30 of the '270 Patent, and that Defendants' generic copy of LATISSE® was not a staple article or commodity of commerce suitable for a substantial non-infringing use.

95. Despite being on notice of the '270 Patent, despite the fact that literal infringement of claims 22 and 30 of the '270 Patent was readily determinable by Defendants when they were put on notice, and despite the fact that Defendants knew their generic copy of LATISSE® had already been found to infringe the related '029 Patent, Defendants have continued to sell their generic copy of LATISSE®. Defendants are aware that, as a generic competitor, Allergan and Duke University are harmed by such sales. Nevertheless, Defendants have not ceased selling their product. Therefore, Defendants' actions have been both deliberate and malicious. Accordingly, Defendants' infringement of claims 22 and 30 of the '270 Patent has been willful.

96. On information and belief, Defendants will continue to contributorily infringe claims 22 and 30 of the '270 Patent unless and until they are enjoined by the Court.

97. As a result of Defendants' contributory infringement of claims 22 and 30 of the '270 Patent, Plaintiffs have suffered damages, including lost profits.

**JURY TRIAL DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a trial by jury of all issues so triable.

**PRAYER FOR RELIEF**

Plaintiffs respectfully pray for the following relief:

1. That judgment be entered that Defendants have induced infringement of claims 22 and 30 of the '270 Patent by making, selling, and offering to sell their generic copy of LATISSE® within the United States and/or importing their generic copy of LATISSE® into the United States;

2. That judgment be entered that Defendants have contributed to the infringement of claims 22 and 30 of the '270 Patent by making, selling, and offering to sell their generic copy of LATISSE® within the United States and/or importing their generic copy of LATISSE® into the United States;

3. That an order preliminarily and permanently enjoining Defendants and their affiliates, subsidiaries, officers, agents, employees, attorneys, and all persons in active concert or participation with any of them, or acting on their behalf, from infringing claims 22 and 30 of the '270 Patent;

4. That Plaintiffs be awarded damages in an amount sufficient to compensate them for Defendants' infringement claims 22 and 30 of the '270 Patent, together with prejudgment and post-judgment interest and costs under 35 U.S.C. § 284;

5. That Plaintiffs be awarded enhanced damages pursuant to 35 U.S.C. § 284 for Defendants' willful infringement of claims 22 and 30 of the '270 Patent;

6. That this case be declared exceptional under 35 U.S.C. § 285 and award Plaintiffs their attorney fees, expenses, and costs incurred in this action;

7. That an accounting be performed of Defendants' infringing activities through trial and judgment; and

8. An award of any such other and further relief as the Court may deem just and proper.

Dated:                                        **FISH & RICHARDSON P.C.**

By: /s/ Jonathan E. Singer by permission Andrea Fair

Jonathan E. Singer (CA Bar No. 283459)
singer@fr.com
LEAD ATTORNEY
12390 El Camino Real
San Diego, CA 92130
Telephone: 858-678-5070
Facsimile: 858-678-5099

Susan E. Morrison (DE Bar No. 4690)
morrison@fr.com
Kelly Allenspach Del Dotto (DE Bar No. 5969)
kad@fr.com
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801
Telephone: (302) 652-5070
Facsimile: (302) 652-0607

John M. Farrell (CA Bar No. No.99649)
farrell@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070
Facsimile: (650) 839-5071

Elizabeth M. Flanagan (MN Bar No. 0389293)
eflanagan@fr.com
Deanna J. Reichel (MN Bar No. 0326513)
reichel@fr.com
Trevor Woodage (MN Bar No. 0392562)
tjw@fr.com
60 South Sixth Street, #3200
Minneapolis, MN 55402
Telephone: (612) 335-5070
Facsimile: (612) 288-9696

T. John Ward, Jr.
State Bar No. 00794818
E-mail: jw@wsfirm.com
Wesley Hill
State Bar No. 24032294
E-mail: wh@wsfirm.com
Claire Abernathy Henry
State Bar No. 24053063
E-mail: claire@wsfirm.com
Andrea L. Fair
State Bar No. 24078488
E-mail: andrea@wsfirm.com
WARD, SMITH & HILL, PLLC
P.O. Box 1231
Longview, Texas 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

**COUNSEL FOR PLAINTIFFS DUKE UNIVERSITY and ALLERGAN SALES, LLC**